## ARUNDEL CORP. v. UNITED STATES.

### No. 49743.

United States Court of Claims.

March 4, 1952.

Floyd F. Toomey, Washington, D. C., for plaintiff. (Lee, Toomey & Kent, Washington, D. C., on the briefs.)

Joseph H. Sheppard, Washington, D. C., Ellis N. Slack, Acting Asst. Atty. Gen. (Andrew D. Sharpe, Washington, D. C., on the brief), for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

The question here involved is whether the payment of income taxes to the Government of Puerto Rico by a joint venture of which plaintiff corporation was a member entitled the plaintiff to a credit against its federal tax liability in the United States of a proportionate share of such taxes under the provisions of Section 131 of the Internal Revenue Code, 26 U.S.C.A. § 131.

The stipulation of facts shows the following: Plaintiff is a corporation organized under the laws of the State of Maryland. For the years 1940, 1941, 1942, and 1943, the plaintiff filed with the appropriate Collector of Internal Revenue federal income and excess profits tax returns, and paid for each year an amount in excess of the refund herein claimed. In each return the plaintiff declared its election to take the credit granted by Section 131 of the Internal Revenue Code for the amount of taxes paid or accrued during those years to any foreign country or possession of the United States.

On November 29, 1939, the plaintiff and another Maryland corporation entered into an agreement of joint venture for the performance of certain construction work at San Juan, Puerto Rico, under a Navy contract, and on October 21, 1941, a third corporation joined the venture.

During the years 1940, 1941, 1942, and 1943, the joint venturers performed work under the Navy contract and received and accrued net income therefrom which was subject not only to tax under the Internal Revenue Code of the United States but also under the laws of Puerto Rico. Under the laws of Puerto Rico income taxes for the years here involved were imposed not only upon the joint venturers' distributable shares of the joint venture's income but also upon the income of the joint venture itself as a separate taxable entity. Thus for the years 1940 through 1943 plaintiff paid to the Puerto Rican government income taxes as follows: $130,557.73, as the tax on plaintiff's distributable share of the joint venture's income; and $184,597.56, as plaintiff's proportionate share of the tax assessed upon the income of the joint venture as a separate entity.

Upon final audit of plaintiff's federal returns for 1940, 1941, 1942, and 1943, the Commissioner of Internal Revenue allowed the taxes paid to Puerto Rico upon the plaintiff's distributable share of the income from the joint venture, in the aggregate amount of $130,557.73, as a direct credit against federal taxes of the plaintiff for the several years involved, under Section 131 of the Internal Revenue Code. This determination is not here involved.

Plaintiff claims here that the Commissioner should also have allowed as a direct credit under Section 131 against its federal taxes for the years involved, the amount of its proportionate share of the tax paid upon the income of the joint venture as a separate taxable entity. It is this amount which is the subject of the present suit.

The Commissioner determined that the amount in question was allowable as a deduction from gross income under Section 23(c) of the Internal Revenue Code in determining plaintiff's share of the net earnings of the joint venture [except for the years 1940 and 1941, for which no timely claim had been made for allowance under Section 23(c)]; but that it was not allowable as a direct credit under Section 131 against plaintiff's federal taxes.

The following statutes are applicable:

(Internal Revenue Code.)

" § 131. Taxes of foreign countries and possessions of United States.

" (a) Allowance of credit. If the taxpayer chooses to have the benefits of this section, the tax imposed by this chapter, except the tax imposed under section 102, shall be credited with:

" (1) Citizens and domestic corporations. In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; and

" (2) Resident of United States. * *

" (3) Alien resident of United States. * * *

" (4) Partnerships and estates. In the case of any such individual who is a member of a partnership or a beneficiary of an estate or trust, his proportionate share of such taxes of the partnership or the estate or trust paid or accrued during the taxable year to a foreign country or to any possession of the United States, as the case may be.

\* \* \* \* \* \*

" § 181. Partnership not taxable.

"Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity.

\* \* \* \* \* \*

" § 186. Taxes of foreign countries and possessions of United States.

"The amount of income, war-profits, and excess-profits taxes imposed by foreign countries or possessions of the United States shall be allowed as a credit against the tax of the member of a partnership to the extent provided in section 131."

(Puerto Rican Income Tax Act of 1924, Puerto Rico Laws, 1925, p. 400, as amended by Act of April 12, 1941, Puerto Rico Laws, 1941, p. 478.)

"Section 2.—(a) When used in this Act—

" (1) The term "person" means an individual, a trust or estate, a civil or mercantile, and industrial or agricultural partnership, or a corporation.

\* \* \* \* \* \*

" (3) The term "partnership" includes civil, business, industrial, agricultural and professional partnerships or of any other kind, whether or not its constitution is set forth by public deed or private document; and it shall include, further, two or more persons, under a common name or not, engaged in a joint venture for profit.

\* \* \* \* \* \*

"Section 15.—(a) The term "gross income" includes * * * dividends, partnership profits * * *.

\* \* \* \* \* \*

"Section 28.—(a) There shall be levied, collected, and paid for each taxable year on the net income of every corporation or partnership a tax of * * * on the net income in excess of the credits provided for in Section 34, except that domestic corporations and partnerships shall pay a tax of * * *.

(Code of Commerce of Puerto Rico, Section 104, 1932 ed.)

" [Members of a general partnership are] personally and jointly liable with all their property for the results of the transactions consummated in the name and for the account of the partnership, under the signature of the latter, and by a person authorized to make use thereof."

Under both Puerto Rican and United States tax laws, the term "partnership", for all purposes material here, included a joint venture such as that in which plaintiff was engaged, and the terms are used interchangeably in this opinion.

Plaintiff's argument is that, first, it is entitled to allowance of credit under Section 131(a) (1) for the amount in question, since plaintiff was the "taxpayer" of its proportionate share of the income tax against the joint venture as a separate taxable entity. To this defendant replies that under Puerto Rican law the tax was laid upon the joint venture as a separate entity, and therefore plaintiff as a member of the joint venture was not the "taxpayer" within the meaning of Section 131(a) (1).

Plaintiff's argument in the alternative is that even if it were not the taxpayer under Section 131(a) (1), it would nevertheless be entitled to the credit sought under Section 131(a) (4). To this argument defendant replies that Section 131(a) (4) allows such credits only to "individual" members of a partnership (or joint venture), and that since plaintiff was a corporation and not an individual it cannot claim the advantage of Section 131(a) (4).

The controversy is grounded in the divergent concepts of a partnership in the Puerto

Rican law and in the laws of the United States. The Supreme Court of Puerto Rico took notice of that difference in Balester v. Court of Tax Appeals, 61 P.R.R. 460, 478: " * * * But the term 'partnership' is not used in our Income Tax Act in the common-law sense. It is a translation of the term 'sociedad' found in the civil law. And a *sociedad* is a juridical person apart from the members thereof. Puerto Rico v. Russell & Co., 288 U.S. 476, [53 S.Ct. 447, 77 L.Ed. 903]. There is therefore no constitutional objection against assimilating a partnership or *sociedad* to a corporation for tax purposes, and taxing both the partnership and its individual members on the same income. Fantauzzi et al. v. Bonner, 34 P.R.R. 464, 74. To compare our situation with that obtaining under the Federal Income Tax Act as applied to a common-law partnership, which under that Act is not treated as a separate entity, except for accounting purposes, and which therefore pays no tax as such, is to invoke a false analogy. * * "

A closely analogous situation to that presented here arose in Biddle v. Commissioner, 302 U.S. 573, 58 S.Ct. 379, 381, 82 L.Ed. 431. In British law a stockholder receiving dividends from profits of a British corporation was required to report as income, in addition to the amounts actually received, an amount known as the tax "appropriate" which reflected her proportion of the tax paid by the corporation on its own profits. Under British law a stockholder receiving such dividends was regarded as having paid "by deduction or otherwise" the tax "appropriate" to the dividends. In her federal income tax returns the stockholder, an American citizen, included in gross income the entire sums so reported in her British returns and claimed credit under Section 131(a) (1) for the amount of the British tax appropriate to the dividends. The United States Supreme Court held that the tax appropriate should not have been included as gross income in the federal tax return and that it was not available as a credit under Section 131(a) (1), since by American standards the taxpayer was not the one who had paid or was subject to the British tax.

■ Defendant's position here in essence is that Puerto Rican characterizations and classifications of tax legislation must govern. In that connection the Supreme Court in the Biddle case said:

"At the outset it is to be observed that decision must turn on the precise meaning of the words in the statute which grants to the citizen taxpayer a credit for foreign 'income taxes paid.' * * *

"Section 131 does not say that the meaning of its words is to be determined by foreign taxing statutes and decisions, and there is nothing in its language to suggest that, in allowing the credit for foreign tax payments, a shifting standard was adopted by reference to foreign characterizations and classifications of tax legislation. The phrase 'income taxes paid,' as used in our own revenue laws, has for most practical purposes a well-understood meaning to be derived from an examination of the statutes which provide for the laying and collection of income taxes. It is that meaning which must be attributed to it as used in section 131.

\* \* \* \* \* \*

" * * * the British conception [is] that the standard tax paid by the corporation is passed on to the stockholders.

" Our revenue laws give no recognition to that conception. * * * Nor have they treated as taxpayers those upon whom no legal duty to pay the tax is laid. * * "

Thus it is evident that defendant's position here has been foreclosed by the Biddle decision.

The analogy is clear. In Biddle the Court resorted to American law to determine, for American tax purposes, whether the taxpayer there had paid the foreign tax, notwithstanding the conflicting foreign concepts. In this case it is the American law which must determine, for American tax purposes, whether the plaintiff was the taxpayer of the Puerto Rican tax, notwithstanding Puerto Rican concepts.

■ Under American law the tax upon partnership income is imposed upon and is payable by the partners upon their respective distributable shares; and there is no tax imposed upon the income of the part-

nership as a separate entity. Thus in the view of the American law it may be said that the total Puerto Rican tax upon the partnership income was imposed in two separate levies upon the partners, once nominally upon the partnership as a separate entity, and once upon the partners upon their respective distributable shares. But it was the individual partners who actually paid and were subject to both levies. Even under Puerto Rican law, Code of Commerce, supra, the individual partners were personally liable for the tax nominally laid upon the partnership as a separate entity. The plaintiff here was not only legally liable to pay the tax upon the partnership as a separate entity, but it did in fact pay that portion of the tax for which it here seeks credit. It was therefore entitled under Section 131(a) (1) to the credit there provided in the case of a domestic corporation for the amount of income tax paid or accrued to a possession of the United States.

This view of the case makes it unnecessary to rule upon plaintiff's contention that Section 131(a) (4) is applicable to corporate members of a joint venture as well as to non-corporate individual members. It suffices to hold that plaintiff is entitled to the credit sought under Section 131(a) (1).

By stipulation of the parties entry of judgment will be withheld pending recalculation by the parties of the amount due in accordance with this opinion.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.